Next case is McCrorey v. City of Philadelphia. McCullough, how are you? Good, Your Honor. Nice to see you. So the landscape has changed since the district court saw this case. Is that your position? Yes, Your Honor. May I be seated? Good morning, Your Honors. May it please the court, my name is David Kohler and I represent the appellant John McCrorey, the plaintiff in the underlying matter. May I reserve two minutes for rebuttal? Thank you. May I just ask a fact question? When this all happened, how close was he to retirement? So within three years, he participated in the drop program. So he elected drop, I think, in 2020. That's a four year commitment. But he retired at what, 22? Well, yeah, he didn't come back to work. Once he was moved out of the East squad to the Northwest squad. He took a medical leave, right? He took a medical leave and he didn't return. Your Honors, the trial court erred in finding that my client, John McCrorey, could not prove an adverse employment action. Did the trial court err or were the goalposts moved? Both. Oh, both. Okay. It's always nice when in the midst of an appeal, the Supreme Court of the United States issues a decision that you thought was in alignment with the theme of your case at the beginning. So I think to address the elephant in the room, Your Honor, I wanted to... Don't count on that too often. I know, exactly. It's a coincidence. You know, we should talk about the Muldrow case, of course. The city argued that McCrorey could not prove his prima facie case as a matter of law because he did not suffer an adverse employment action and claimed that the reassignment to the Northwest squad was a mere lateral move. And Judge Canning... How is that an adverse? Northwest, we'll say it's quieter, say, than East division, right? Right. And so he's transferred to a division that's quieter on the eve of his retirement. Isn't his real complaint that he wasn't with his guys? No, his real complaint is that he was discriminated against because of his age. We'll talk about the adverse. What's the adverse impact of going from East to Northwest? The prestige.  That's a very subjective term, right? There are a lot of folks that would want to be in Northwest just before they retire. The way that the East division came about, Your Honor, is all throughout the record, even from Chief Flacco, who said that it was... He implemented an innovative drug enforcement approach in the East squad. He explained that the newly revamped East squad would focus on going up the chain to get the suppliers, case workers, and stash houses. He explained that the newly revamped East squad would spend more time on investigations. And he admitted that the East squad is a very different drug operation than Northeast or Southwest or the South. There was also testimony from a bunch of people, including Flacco, about what it took to get selected for the East squad. So we think the record is clear. But to answer your question, it depends on what you want out of your job. For McCrory, my client, who worked as a police officer for the city since 1982, he didn't want to end this way. He was a lieutenant. No loss in position, did he? Right. Your Honor, that's right. And that's why, when I answer Judge O'Shea's question by both, because I feel like it's an adverse employment action, and the case law supports my position, even before Muldrow. And then Muldrow just allows me a lower standard of some harm. But because of prestige, is there anything else? Yes, there is. We think that it affected the terms and conditions of his employment. The East squad, if we look at the objective evidence, the East squad was larger. There's 20 people and three new supervisors. And the Northwest squad, the evidence on record show that it went from 10 to five officers. So that's harm. That's some harm, according to the Supreme Court's terms, some harm. That's a disadvantage change in the condition and supervisory authority. Less supervisory authority. He's used to managing. He was the lieutenant of the East squad for a long time. And then I know I tried to bring it up, and it's not really the inquiry here, but with multiple people testifying about Mr. Flacco's discriminatory comments, he did not want to be moved. We think that the evidence of record shows that it was more prestigious and innovated by the city's own admission, which shows some harm and it's a disadvantage to change to the East squad. And Inspector Taylor, who we deposed, testified that Flacco intended to implement a different enforcement strategy in the East. He talked about his vision, and we think that the jury could infer that more visibility and exposure for officers who achieve those goals, it's more advantageous in the East. The East also includes Kensington, which Flacco in his deposition referred to as the Mecca of narcotics. And a jury could infer that officers who infiltrated that market would see their careers advance. There's high-profile operations and arrests. But at the end of his career, with the antagonism that existed with respect to Supervisor Flacco, wouldn't going to Northwest Division be significantly less stressful? Maybe for the four of us or everyone in this room, but it's not what McCrory wanted. And what I'm saying is I have objective and subjective evidence here. The objective, I just recited some of it to you, but the subjective is to which I think is enough, and I'll tell you why in a second, of how McCrory feels, not respectfully, Your Honor, how you feel or how I feel about it, how McCrory feels, I think is certainly enough under the new standard. Also, I do want to touch on this. This is interesting. It's the same judge. I actually was here in January arguing on PFER versus the PA parole, PA Board of Probation and Parole, 106 F. 4th, 270. And Judge Kenney, the same judge in McCrory, granted summary judgment in that case, saying that my client, probation officer who was pregnant, did not suffer an adverse employment action. I argued January. Muldrow came down in April. Your colleagues asked us to submit supplemental briefs. And it was, I think, one of the first applications of Muldrow by your court, the Third Circuit, and it remanded the case back to Kenney, who just last week reversed course and said, I can show adverse employment action because of. There's much more objective evidence in that case than in this case, right, in terms of an adverse employment action. You're asking me to compare my children here. Your Honor, I appreciate that. I like both cases, and I thought that Samantha Pfeiffer had strong evidence, and I thought that John McCrory had strong evidence, and I think both cases are made even stronger because of the Supreme Court case that lowered the standards. So I'd say maybe, but I think McCrory has it. I think he has the evidence in this case. And Judge Kenney last week concluded that we can show he found at least a triable issue on what constituted some harm, which is the term in the Supreme Court case, and indicated in his order that he issued last week that emotional stress, humiliation, fear of losing a job, and fear of losing a regular paycheck were sufficient to meet the prima facie claim of an adverse employment action under Muldrow. We think it's reasonable to conclude that if you remanded for him to analyze this case under the new standard, which is what we're asking, that he would rule differently in McCrory also. And again, I mean, I know you hear this all the time. I'm not saying I'm winning this case at a trial, but a reasonable jury could find this. I just wanted to touch on the case law. Even if you win, I mean, in terms of damages, somebody who's irrevocably set to retire is going to have a tough time saying, you know, geez, I should have gotten career advancement. You knew that's not going to happen. It would really be loss of prestige. And I keep coming back to Judge Restrepo's first question is, didn't he just want to be with his guys? I mean, the reason why I'm saying no, Your Honor, is because of the word just. He did want to be with his guys, and then some. And the record is there's a lot of support for that in the record. But to answer your questions about damages, yes. But that's a question about damages. That's not summary judgment. And in employment cases, one of my main categories of damage is, of course, it's wage loss, which is primary. But I'm still taking a case if there's no reduction in pay, benefits, title or change of duties, especially after the Supreme Court decision, and emotional distress, emotional harm for a gentleman. And then, again, getting back to the facts as alleged, I think once I get over this hurdle, if I can, the case is strong with a lot of witnesses testifying that Mr. Flacco made these comments and created this East unit with age as the main factor. Why don't you address your retaliation claim in the time that's remaining? Sure. And there's a reason why I'm focusing primarily on my discrimination claim. I think with retaliation, all I want to touch on is that Judge Kenney also dismissed it, saying that's not an adverse employment action. Let me just turn to the last page of my outline here. What I want to say about that is just the denial of the drop extension, our position is qualified as an adverse employment action. Keep in mind that the standard for evaluating and establishing an adverse employment action in the concept of retaliation claims is a less onerous one. Isn't it true for the drop extension to apply he had to report for duty, so to speak, and he called in sick? Right. There's a dispute on that because he had to sign forms, and I know the defense's position is that it says, are you able and available to work? And they're taking the position that he wasn't, and he's taking the position that he was. He's just out because of his decision that he had to leave because of what happened with the transfer. So technically, he's saying it's a dispute. He's saying that he was available and able to work, and he would have come back. They're saying that at that time, he wasn't. And, you know, and then just on the retaliation, we say that we can't establish a causal connection between the EEOC charge and the denial. The city claimed that the decision-makers were not aware of the EEOC complaint, but we think it's a jury determination to determine whether that testimony is credible. McCrory testified that someone told him that Mr. Flacco was trying to get rid of him by denying his drop extension. We think the jury should weigh that evidence because Flacco knew that McCrory was part of the drop. He claimed that he was not involved in the drop extension, but he also denies making a lot of comments that other folks, you know, have testified were made. So we think the jury should decide whether that assertion is true. So given Flacco's ageist comments, the jury could infer that he played a role because he didn't want McCrory to continue working because he wanted to create this E squad that was full of younger folks. Thank you very much. Thank you. Good morning. Good morning. How are you? Good morning. My name is Kelly Diffily. I represent the city of Philadelphia in this matter. You've got a rough hill to climb in light of Muldrow. I mean, didn't the court change the standard for what constitutes discrimination, age discrimination here? Certainly the Supreme Court in Muldrow changed the standard, but I don't think it radically changed the standard. It essentially lowered the quantum of harm. It made it very low. It I think what's important to remember in Muldrow is the plaintiff in that case actually asked the court to completely eliminate harm, the argument being that the discrimination is the harm. And that was addressed in Judge Kavanaugh's concurrence, where he advocated that position. The Supreme Court opted not to adopt that position. They decided to retain a level of harm that needed to be shown, essentially to weed out the most low harm, de minimis type harm situations. Your Honor, I believe that this is that case. This is the type of case that the Supreme Court intended to weed out with some harm. Then you have another. It's like they keep piling on you. How do you reconcile the district court's order here with the orders denying summary judgment for the city in Muldoon and Shuck's cases? I think that those cases, first of all, we don't have those records before us. We don't know what the evidence was with respect to what the plaintiffs testified. They were in different positions. In fact, the lieutenant Muldoon in that case, actually neither Muldoon nor Shank were actually moved. They were in the Northeast squad. They stayed in the same position. The facts were completely different. Moreover, if you read the district court's opinion respectfully, I don't think there's a very searching analysis in those cases to decide whether there is sufficient harm of an adverse employment action. Your Honor, we're talking about some harm. That's a pretty low threshold, and counsels are arguing lack of prestige in terms of being moved from east to northwest. Why is that not enough? The district court here did not make its decision based on the quantum of harm. It wasn't that it wasn't significant versus some. The district court here found that the evidence was lacking, i.e., it was too subjective, and he essentially didn't put forth sufficient evidence that objectively it was less prestigious. I think that the questions during Appellant's argument are very telling in that, right, to the extent that the northwest squad had a lower volume, it's not going to be as busy as the east squad. You know, if you're looking at that objectively, certainly that could equally be evidence that it is less prestigious and a more difficult working environment. The argument would be that, okay, perhaps I don't get as many damages as some others, but I do get some damages, and if nothing else, the principle on which I stand prevailed. That's what they would say. Again, I think that the Supreme Court opted to maintain a level of harm. It's got to be some harm. It's got to be objective harm. The answer can't be I want to work with my guys because if the answer is subjective harm, well, every single plaintiff who's bringing a case obviously is going to assert subjective harm. So I think the question is whether the record evidence here actually establishes that there is objective differences between northwest and the east squad, and the district court probably found that there was not sufficient evidence of objective differences between the two. But at the very least, doesn't this call for a remand under the new test in Muldrow? I think that the change in the standard here was a minimal change, again, in the quantum of harm. And I think that the – Minimal change? I think it's a fairly minimal change, Your Honor, respectfully. It's not the way it was portrayed in the blogs. I think more importantly, however, again, it wasn't the quantum of harm that was the basis of the district court's decision. The district court's decision was really based on, with respect to, for example, overtime, was that it was – his assertion that he would have more overtime opportunities in the east squad was speculative. That's going to be the same whether or not the standard is a significant harm or a sub-harm standard. The same is true with respect to prestige. The district court found that the failing with regard to prestige was not – was that he didn't put forth evidence comparing the prestige of one unit versus the other. He sort of just conclusively stated it's more prestigious. What about Flacco's testimony as to what happens in east division? I think that Flacco was brought to the Narcotics Bureau because it was extremely problematic, frankly. He was coming in. He was asked to fix a bureau that had a lot of problems. I think that the resources and the plan that he was implementing with respect to the east squad are reflective of the fact that it was a unit in a geographic area that had a high drug volume and that the prior plans just weren't working. I don't think that putting forth the resources and attention on that squad, which, you know, had this high volume and were not getting investigations that were going higher up the chain of command. They were kind of doing these buy and bust type situations. That doesn't necessarily reflect it's more prestigious. It reflects that we need to pay some attention to something that's not working. Can you explain to us why we should treat this case differently than the panel did in Pfeiffer? That is, what are the facts that you think distinguish this case from that case such that that one it made sense to remand and this one it doesn't? I mean, I think the main thing is that that case was fully briefed and argued before the decision came out. The parties did not have the full opportunity to present the arguments in the way that we have in this case. In this case, both parties briefed the issue of how Muldrow applies in our briefs and obviously add argument. I think that, you know, the main differences here, again, are the lack of objective evidence and that the district court's decision was not based on quantum. It was not based on it wasn't significant enough. It was based on the infirmity in the evidence or the lack of evidence that he put forth. He basically put on speculative opinion-based evidence that the district court found was not sufficient. So if you're going to remand it, the district court would make the same decision. And I think this is exactly the kind of issue of law that this court is perfectly poised to decide. The initial decision was made on a adverse employment action that has been defined as significant change in employee employment status. We know that's no longer the case. And the Supreme Court says in Muldrow that even, quote, not so significant disadvantages can cause an adverse employment action. And so that decision seems that it has to be made by the district judge, right? Not us. Certainly, Your Honor, that is the standard that the district court articulated because it was the standard that this court in prior decisions had set forth. My point is that if you actually go to the harms that he articulated, were the harms at issue? Over time, prestige. The district court, when it actually analyzed those prongs, didn't make its decision based on that it wasn't significant enough. The district court made its decision essentially saying he didn't put forth any competent, non-speculative evidence to prove that point at all. So whether the quantum is some or significant, it would have come to the same decision. Well, the court is saying it's not so significant can nonetheless apply. I mean, again, I keep coming back. It seems like the judge needs to make a decision as to whether this is an adverse employment action. And then the question becomes, are damages de minimis? I would go back to the point that the Supreme Court had the opportunity to have essentially a no harm analysis to do what Judge Kavanaugh did in his concurrence. And it opted to say, no, we're going to have some bar. And I think the court's concern was that if it didn't have some bar that a plaintiff had to surmount, that it was essentially you were going to flood the courts with cases where the harms at issue were just completely de minimis. And I think, again, that is this case. You have someone who's going from it's not a true transfer, right? He's not going to another unit, another division. He's staying in the same place. He's doing the same job, same supervisory responsibilities. There's no real change in the difference between the two jobs. Just wanting to sort of stay with his guys, his friends, in the final year of his employment. And I would just quickly say that the record evidence is that he had one year to go when the decision was made. It was September 2020. He retired in October 2021. So he was really on his way out the door. And, you know, so to suggest that that would be the type of harm, I think that that's exactly the kind of harms the Supreme Court meant to eliminate. When he entered the drop program in 2020, if it had played out, when would he normally have retired? I'm sorry. He entered the drop program in 2017. Oh, 2017. Yeah. So it's a four year. So his drop date was October 2021. The decision, the decision, excuse me. My fault. Yeah. So the decision was September 2020. So it was just about a year prior to the end of his tenure. Right. And when you make that commitment, you can't opt out. Moving on to pretext. Your Honor, I didn't ask too much about this, but I just want to really quickly touch upon it, just because it's a fully briefed alternative basis for affirmance that even if Your Honors feel like we didn't establish the first prong, perhaps it would be likely to go back for remand. Your Honors don't need to do that because the pretext prong is an alternative basis for affirmance. We argued this in our response brief and appellant opted not to file a reply brief, which I think raises a significant waiver issue. He didn't even try to rebut whether the evidence established a lack of pretext. That issue was briefed in the district court, but admittedly, it was not a basis for the district court's decision. Did the district court even get there? It didn't. I mean, but Your Honor is obviously well aware of the fact that there are many times that this court affirms on alternative basis. And I think that when you're asking that remanding it back to the district court for the district court to consider first employment action in the first instance, just as a matter of judicial economy, when there's a completely sufficient basis, which again was briefed in the district court by both sides, it just doesn't make sense from a judicial economy standpoint for it to go back and be reheard on this other prong. Very quickly, I want to present something that admittedly I did not put in my brief. So part of the prime facia case for an age discrimination claim is establishing that the position was filled by someone who was significantly younger. It's the fourth prong of the prime facia case. Diving very deep into the record over the weekend, I realized that there is actually no evidence in this record establishing the age of the lieutenant who took the position in Eastwood, Lieutenant Newsome. The only allegation that I could find in the entire record was an assertion that it's in the district court opinion, but it cites to the complaint. And the complaint obviously is not competent evidence on summary judgment. Said he was in his 40s in the complaint. Do you want to address retaliation? Sure, Your Honor. I mean, the retaliation claim from the city's perspective fails three times over. I think the biggest glaring problem with the retaliation claim is that the decision was made by someone in an entirely separate wing of the police department. And there is absolutely no evidence in the record that those people knew about the EEOC complaint at all. So you obviously can't establish causation if the person who made the decision didn't know about it. But moreover, whether or not Mr. McCrory, Lieutenant McCrory, believed what he was signing, said he was able to work at the time he signed versus when he was going to be called back. I think that that's irrelevant. The point being that this was obviously an entirely neutral criteria that the police department was applying. The record evidence shows that the only other people who were denied the option to go back in the drop program were also people who were out on sick leave. So there's just simply no indicia of any retaliatory animus that would suggest that a retaliation claim could go forward. Thank you very much. Thank you, Your Honor. May I proceed, Your Honor? Thank you. First, just a couple of points I just have. The issue on adverse employment action is for the jury to decide. My position is simple. The judge in the lower court, even before Muldrow, applied too harsh of a standard given the standard pretty much that we had adopted for a long time. Right. Well. A significant change in employment status. Right. Considering the evidence on record, he applied it too harshly and then the standard loosened significantly. Pretext, as Judge Estrepo pointed out, the judge, in his opinion, didn't even get to that in any type of analysis. He stopped at the adverse employment action. What about Ms. Divley's point that there's no evidence in there that the position was filled by a younger person? That's the first time I'm hearing that. I think that there is. But I think my client testified about it. I had three cases on this, as you know. So, I mean, I'll look back at it. I didn't even think that point was disputed, that in light of his comments, which we have corroborating evidence that the comments were, in fact, made. Flacco was at the meetings asking people who's participating in the drop. That's the older people. And throughout the record, there's testimony that he was looking to establish a younger workforce. Because he made comments even like, because during COVID and the outbreak, we don't need 50-year-olds running the E-Squad. So I don't know if there's a specific age reference to the particular person that he chose for lieutenant. But I think the record is sufficient in that regard. I think on Pfeiffer, counsel kind of misspoke. I had the privilege of representing Ms. Pfeiffer to say that, you know, the case was decided or it wasn't fully briefed or fully argued. You know, the opinion came down after your court ordered both sides to submit supplemental briefs on that issue. Furthermore, once it got remanded to Judge Kenney, I had to brief this thing like, I lost track of how many times, but I'm being a little bit, trying to be funny, but at least three times. Once it got remanded to Judge Kenney, he asked us to brief it again. So, you know, to represent to the court that it wasn't fully briefed and it would have been different is inaccurate. I was there. I was the attorney. And I think Moultrie was very similar to this case. I think it's, and I think if you look at the cases we cite in our brief about police officers and transfers, I think that you'll find that they're very similar to this case. I think Judge Bartle and Judge Perez, in two cases that we have as part of this record, said it best. Defendant argues the plaintiff did not experience any adverse employment actions because his job responsibilities and pay would not differ between squads. But the judge says that the court finds there's sufficient evidence in the record, this is in the Muldoon case, in his opinion, that defendant's failure to consider Muldoon for the East squad and the removal of Muldoon from the Northeast squad to a less desirable squad constitutes adverse employment actions. Even if plaintiff's job responsibilities and pay would not have differed between squads, his transfers can be considered as an adverse employment action if there is evidence, as there is here, that his new position is less desirable than his previous one. And he cites some cases that we put Lake Hampton and Torrey in our position. And he, of course, gives the opinion at the end, the court takes no position on the merits of this action, but in the light most favorable of the plaintiff, there exists genuine disputes and material facts. Thank you very much.